Plaintiff, an electrical contractor doing business under the name of Busy Electric Co. in the City of New Orleans, brought this suit to recover the sum of $999.47, representing the amount allegedly due by defendant for the installation of certain electrical work at the Dauphine Theatre under a "cost plus" contract. He averred in his petition that, on April 14, 1944, he entered into a written contract with the defendant to install for her the electrical work at the Dauphine Theatre for certain stipulated rates for labor and material plus 11.7% for insurance liability and compensation, 25% for overhead and 10% for profit; that, in conformity with said agreement, he performed the work required of him; that the cost of the job, including charges for overhead and profit, amounted to $999.47 and that, despite amicable demand, defendant has refused to pay.
In due course, defendant appeared and prayed for oyer of the contract between the parties. An order was issued and plaintiff complied therewith. Thereafter, defendant filed her answer in which she denied liability and affirmatively set forth that, as shown by the written contract, she signed an acceptance as agent for one Jack Joyce; "that anything to the contrary, which may be claimed by plaintiff was inserted without respondent's knowledge or authority"; that it was only because Jack Joyce, who was the real contracting party, had absconded, that an attempt was being made to hold her responsible and that, at all events, plaintiff's claim under the contract was padded and grossly excessive.
When the case was called for trial on the foregoing issues, defendant made a general objection to the reception of any evidence on the ground that plaintiff's petition did not disclose a cause of action. The Judge reserved his ruling on this objection and, after hearing the evidence, granted a judgment in plaintiff's favor for the sum of $549.47. Defendant has appealed from the adverse decision and plaintiff has answered, praying for an increase of the judgment below to the amount for which suit was brought.
In this court, defendant has complained that the District Judge erred in failing to dispose of her general objection to all evidence in the case, which was based on the ground that plaintiff's petition fails to state a cause of action in that the contract declared upon shows on its face that she was acting as agent for Jack Joyce and not for herself. While it does not appear that the Judge specifically passed on defendant's objection, the fact that he gave judgment in plaintiff's favor after a trial of the merits is tantamount to the overruling of it and produces the same effect. Hence, the question is whether it should have been maintained.
The agreement, which is styled "Cost Plus Contract on Labor Materials", is dated April 14, 1944, and is typewritten on plaintiff's stationery. It is addressed to "Jack Joyce, Dauphine Theatre, New Orleans, Louisiana" and provides for the installation of electrical work for Mrs. E. Spearman, Dauphine Theatre, as directed "as per the agreed rates for labor and materials". Then follows an itemized basic hourly rate for electricians, helpers and foremen with double pay for overtime, plus 11.7% for insurance, 25% for overhead, 10% for profit, terms net cash. The contract is executed by plaintiff as proprietor of Busy Electric Co. and, under his signature is typed "Accepted by Jack Joyce Signed" with defendant's signature appearing after the word "Signed".
Originally, the body of the document providing for the installation of the electrical *Page 234 
work contained the statement that the job was to be done for Jack Joyce. But the name "Jack Joyce" has been stricken out with pen and ink and the name of Mrs. B. Spearman inserted in its place and stead.
It is defendant's claim that, since the contract was addressed to Jack Joyce and accepted by him through her, it is clear that she was acting as agent for a disclosed principal and that, inasmuch as plaintiff has failed to allege error or fraud, parol evidence was inadmissible to show that she was contracting for her own account. There would be considerable force in this contention if the body of the instrument, as altered, did not exhibit that the work was to be done for defendant herself. This substitution of defendant as the person for whom the work was to be done produces an ambiguity as to the design of the parties which makes it impossible to determine, by a mere consideration of the instrument alone, whether it was intended that she was to become personally liable or whether she signed simply as agent for Jack Joyce.
[1] Under Article 1945 of the Civil Code it is provided, in substance, that legal agreements have the effect of law between the parties and that the intent of the parties is to be determined by the words of the contract "when these are clear and explicit and lead to no absurd consequences". But when the provisions are indefinite, ambiguous or inconsistent, it is necessary to resort to parol evidence in order to determine the true intent. In the case at bar, plaintiff asserts that the defendant made the contract with him and that she is bound thereunder. This charge is not overcome by the contract itself as the agreement as written does not authorize a different conclusion. On the contrary, the wording of the contract is such as to exhibit doubt and, therefore, parol evidence was admissible to show that defendant, and not Jack Joyce, was to be bound.
[2] On the merits of the case, it is the contention of defendant that her name was inserted in the body of the contract, without her knowledge and consent, after she had signed the instrument for Jack Joyce. She further maintains that, although she had an agreement with Joyce to pay for the cost of renovating the Dauphine Theatre to be used as an ice skating rink and for the production of ice skating shows in consideration of payment to her of 50% of all of the profits earned in the amusement enterprise, she had nothing whatever to do with the installation of the electrical work and that she signed the contract with plaintiff "temporarily" or until the signature of Joyce could be obtained. She testified substantially in accordance with her contention. However, the evidence produced by plaintiff, which shows that defendant bound and made herself liable personally for the electrical work, clearly preponderates over her testimony. In truth, a reading of the record (which is flooded with repetition and contains over 250 pages of testimony) has convinced us that there is but little merit in defendant's denial of liability. The facts, as we view them, are as follows.
Jack Joyce is an actor and a theatrical impresario. During the month of February, 1944, he interested defendant in a promotional scheme to renovate the old Dauphine Theatre for the purpose of conducting an ice floor show and skating rink and to operate it as a theatre club. On February 26th, Joyce and defendant entered into a written contract whereby he agreed to pay her fifty percent of the net profits of the enterprise in consideration of defendant's assumption of all obligations for the reconditioning of the theatre. As a further consideration, Jack Joyce agreed that defendant's daughter, Miss Lorraine Spearman, would be given a position either as secretary for the theatre or show girl or both. The contract was signed by Joyce, the defendant and defendant's daughter.
Shortly after making this contract, certain renovating work was done and, on or about April 14, 1944, plaintiff, having heard from different contractors that electrical work would be necessary, drew up the cost plus contract addressed to Jack Joyce and had his superintendent, Mr. Joseph L. Pecot, present it for signature. When Mr. Pecot arrived at the theatre he sought to contact Jack Joyce but was informed that the *Page 235 
defendant, Mrs. Spearman, was letting out all contracts and that she was the person to interview. Accordingly, he contacted Mrs. Spearman, made the alteration in the contract by deleting the name "Jack Joyce" and inserted her name in its place. Mrs. Spearman then signed the agreement. However, Pecot, having been instructed by plaintiff not to begin work until the party for whom the work was to be done could be investigated as to their financial responsibility, informed Mrs. Spearman that she should contact plaintiff for the purpose of establishing her credit. Conformably, Mrs. Spearman immediately went to plaintiff's place of business for an interview.
Plaintiff testifies that defendant called upon him on the afternoon of April 14th, informed him that she was a real estate owner and referred him to her agents, B. A. Carrere 
Sons, who were in charge of her properties; that he communicated with her agents and, upon being satisfied that defendant was a good credit risk, instructed his men to perform the job. Thereafter, the electrical work was installed in the short space of three days in order that the show could open on Monday, April 17th.
The record is not only replete with evidence sustaining the above stated facts but ample proof has been adduced to support the judgment in plaintiff's favor for the sum of $549.47, representing the cost of labor plus overhead and profit for the job.
[3] The judge of the lower court, however, disallowed two of the claims made by plaintiff, i. e., a charge for $400 for the rewinding of two electrical motors which were to be used in connection with the ice show and another item of $50, charged to defendant for the rental of wiring, etc. Plaintiff, in his answer to the appeal, asserts that the judge was in error in not allowing recovery for these items, contending that they were part of the proposed electrical work and were contemplated by the contract. The refusal of the judge to permit recovery of these charges was based on the ground that the contract is silent with respect to any charge for rental of wiring and that defendant did not authorize the rewinding of the motors.
The evidence, in our opinion, sustains the view of our brother below. With respect to the charge of $400 for rewinding the motors, the testimony shows that, when the electrical wiring had been completed and it became necessary to attach the motors, it was discovered that said motors were wound to accommodate a two-phase current, whereas the current supplied by the New Orleans Public Service is three-phase. In these circumstances, it was necessary that the motors be rewound. This work was authorized by a Mr. Rasmussin, who was apparently in charge of the air conditioning work and who had no contractual relationship with defendant individually. It has not been shown that, at the time the rewinding work was done, defendant had any knowledge of said work or that she had authorized anyone to do it. In view of these facts, the claim was properly disallowed.
The same is true with respect to the item of $50 for rental of wiring, etc. There is nothing in the contract providing for such a charge and the record is barren of any evidence showing that defendant approved it.
For the reasons assigned, the judgment appealed from is affirmed.
Affirmed.